Our first case we'll hear is Keene v. Berryhill, and Mrs. Manon, we'll hear from you. May it please the court, I'm Christine Boehner, I'm here today on behalf of Terry Lee Keene. Today I'd like to focus on two threads that run throughout this decision. First, the AOJ omitted uncontroverted material favorable evidence. Very specifically, he omitted that Mrs. Keene was near 60 years old, had spinal cord compression, significant for a mental encroachment, radiculopathy, as well as bone marrow edema and bursitis in her hips. He omitted that she was prescribed a cane for use in her home, and that when she was outside trying to grocery shop, she had to use a shopping cart or an electric one. He also omitted that... Is a cane relevant? I'm sorry? The statute, I thought, makes a cane irrelevant as long as you have one hand. The cane... Agulatory is not defined by whether you use a cane or not, whether you use a walker. Actually, under the regulations in, I believe, yes, it's 20 CFR listing 1.00, the definitions for the listings, it specifically states that a cane can meet the listing. You have to have one hand if it uses both hands. A single cane, sir. I understand, but I'm referring to, I think, what you're talking about. We've had a cane involved before. I'm not sure we've ever held that a cane makes a person not ambulatory. In other words, a walker would because the statute says or the reg says you need both arms. I understand completely. You're right. A walker is part of the listing itself. However, in their explanations, the agency says, and it's in my brief, that a single cane can meet a listing if she is otherwise, as in this case, she can walk less than 200 feet even with her cane. Well, in that very same medical report, Willis prescribed the cane. Yes. He also said she was getting around well with her pain management. That's also true. I mention it only because he specifically said she didn't require an ambulatory device, and she certainly did. We're not actually arguing that she meets listing 104. We're arguing that her ambulation was so poor that she could not perform her past relevant work. Her past relevant work, one of the things the judge omitted was that she required assistance. Her employer had to give her assistance. And eventually, they got tired of doing that, and they were bringing in a machine that would replace her. And so they offered her early retirement. As part of her job duties, she had to carry 20-pound bank deposit bags, and she could no longer do that. She also suffered from poor memory. There were inaccuracies in her work. Another place she said she carried a maximum of 10 pounds during that job. That was her own form when she listed how much she carried during her job, 10 pounds. That's right. She has two inconsistent statements. That's correct. However, the AOJ never decided which one she could actually do. But we know that she could not carry grocery bags. She could not carry a laundry basket. She could not take out the trash. We know those things. And we know that she had great difficulty climbing stairs and that she required assistance with many household chores, and also that she needed to rest during the day. The no grocery bags makes me think that the 20 pounds was the right number. The AOJ here also failed to explain his conclusions. For example, the AOJ failed to explain why Ms. Keene's spinal disorders did not meet, Listing 104. Now, we know that it did not, but we know that because the agency's counsel told us that during the middle of the litigation, not the AOJ. The AOJ never listed the requirements, the criteria of Listing 104. He never listed the relevant evidence. He compared the relevant evidence to the requirements of the listing. And she was very, very close, and that's what mattered, because it indicates the severity. She had cord compression. She had nerve compression. She had radiculopathy. She had atrophy, weakness, decreased reflexes, decreased sensation. The only one she was missing was the straight leg raising, and we don't even know about that because no one tested her during the relevant period, only prior to the relevant period. We know that her ambulation was ineffective because outside her home, if she had to do anything like grocery shopping, she had to lean on a cart or use an electric cart. This decision also failed to explain conclusions by including no evaluation of Ms. Keene's symptoms on her ability to perform each of the basic work-related tasks identified by the agency separately for a full day, and that is what SSR 1986-8P requires. The judge didn't do it. If you look at those specific basic functions, reaching, we know she had trouble reaching. She went to complain in the emergency room. They found arteriosclerosis. Her spine was doing this, and that was causing pain in reaching, and the doctor in the emergency room directly told her to avoid lifting and reaching. ALJ left all of that out. Now the ALJ concluded that she could perform her past relevant work, but it required reaching. In this court, actually, and I believe it's Pearson citing Deloach, it commented that cashiers, which are much like tellers, that job does require reaching. In terms of lifting. There's a lot of inconsistencies, and the ALJ found that she tended to overstate or exaggerate. This is during the period. This is in the spring of 2013, and this is Will's report when he prescribed to Kane. He said, the pain medication allows the patient to perform activities of daily living. The patient's mood has been fair. The patient uses the following assistance devices, colon, and nun. The patient does not have symptoms of numbness and tingling in the extremities. Now these are all findings made during the relevant period. He concludes she's getting around with pain management, that the pain management is the medications, and he did give her a cane to assist her, but he's asked her, he says, asked if the patient had fallen in the last six months. The patient says no. Gets around in daily activities. So these are all findings by doctors making observations, objective observations, in treating her. And the question is, isn't that substantial evidence on which someone could rely to say she could at that point in time do sedentary work? Of course. The judge could have. He didn't. He didn't. He didn't order testing of her for straight leg raising. He didn't inquire. And that's part of the problem with the decision. Because we're not here today talking about whether or not, well, we are to a certain extent, but the question is not whether she was disabled. The question is whether or not the ALJ properly addressed that question. I agree that there is conflicting evidence, of course. The problem is the ALJ ignored it. It's his responsibility. The problem is conflicting. Is there any evidence that says in the spring of 2013, during the relevant period, that Dr. Willis was wrong in his observations? Of course she's not going to say her doctor was wrong. Pardon me? Ms. Keene did not say her doctor was wrong. I mean, is there any evidence in the record that during that period she could not get around and do her daily activities, that she had not fallen, that she had no tingling, that she was getting around without a tingling? Yes, sir. There's evidence in the record. In her function reports, her disability reports. Yes, sir, in the eExhibits. What's the date of those? I'm sorry? What's the date? 2012 and 2013. Well. I can give you some examples if you like. No, I'm sorry. Okay. But part of the real problem with the ALJ's decision here is that the ALJ did not resolve the conflicts in the evidence, and that's his job, not ours. The ALJ also, for example, he limited her to sedentary work, but when he was talking to the vocational expert, that's 10 pounds, but she says that she lifted 20 pounds. And several times in the record she says those were very heavy and that she had trouble and people had to help her with them. So I think the 20 pounds is correct. I don't think there were always 20 pounds, but sometimes there were 20 pounds. Those deposits. And the problem is his question to the vocational expert said sedentary work, but then he returned her to her past relevant work, which involved carrying 20 pounds. It involved working with assistants. He did not address whether or not she needed assistance. She was being let go because she needed assistance, and that's just not there. He never addressed the question. The decision is full of conflicts, full of omissions, failures to explain. Actually, nothing in here is ever explained. There are no explanations in here. All he's done is reiterate evidence, kick in a conclusion. That's all that's there as far as I can tell. You may disagree, of course. But, for example, you asked me about her activities of daily living and whether there was evidence that contradicted the doctor. The ALJ himself admitted that she was not independent doing her household chores, that she only shopped once a week, that she grocery shopped, that she only went to the doctors and to church. She only cooked frozen dinners. She only cleaned once a month. That took all day, and she had to rest. So if you're looking for evidence that contradicts the doctor's statement in that particular report, yes. And she said those things several times. Now, the ALJ referred to those as extensive activities of daily living, but when all you could do is shop once a week, clean once a month, and cook frozen dinners, those are not extensive activities of daily living. And our position is that the decision is so poor it cannot stand. Is that it? Yes, sir. Okay, thank you. Thank you. Ms. Agarwal. May it please the Court, Ashish Agarwal for the Social Security Administration. It's important to remember that Ms. Keene has been receiving disability benefits since 2014. Her initial claim for disability in 2012 was denied in its entirety, and that denial was upheld on reconsideration. The ALJ below found that she was entitled to benefits from 2014 going forward, based in part on a finding of medical evidence of a mood disorder. However, the ALJ denied her claim for benefits from 2012 to 2014 based on finding that she had a residual functioning capacity to perform sedentary work, including her past job, and a finding that she did not satisfy any of the relevant listings. The ALJ's decision was upheld by both the Appeals Council and by the magistrate judge below. The question on this appeal is whether substantial evidence supports the ALJ's decision. And although Ms. Keene raises a number of arguments, she has failed to satisfy her burden of showing that substantial evidence does not support the ALJ's decision. At best. Well, where in the record, with respect to listing 102A, not 104, but 102, does the ALJ meet the criteria, in our case in Radford, where the ALJ needs to fully explain and compare the listing criteria to the evidence? Yes, Your Honor. The ALJ makes his decision regarding 1.02 on page 4 of his opinion, which is page 28 of the administrative record. And the discussion takes place at page 6 to 8 of the ALJ's opinion. And I think if you look at the case of Smith and other cases... Did the ALJ compare each of the listed criteria to the evidence? Your Honor, the standard is, under cases like Cook and Radford, did the ALJ provide a meaningful, coherent discussion that provides... But my question is, in those pages, did the ALJ compare each of the listed criteria to the evidence? There is not a side-by-side comparison, Your Honor. That's correct. But if you look at the analysis that takes place on pages 6 to 8, the ALJ does, in fact, go through the key elements of listing 1.02 in the context of discussing Ms. Keene's residual functioning capacity. If you look at cases like Smith and McCartney, those cases indicate that it is sufficient to examine an ALJ's decision as a whole. So a discussion that takes place in one part of an opinion that is focused on, say, the RFC analysis, is sufficient and can be sufficient to satisfy the requirement to provide that coherent discussion regarding 1.02. So specifically, with respect to 1.02, the standard is, is an individual capable of sustaining a reasonable walking pace to carry out the activities of daily living? Well, in the discussion on pages 6 to 8 of the opinion, the ALJ does, in fact, note that she engages in extensive... Are Smith and McCartney published opinions? Those are unpublished, very recent unpublished opinions from this Court. And Radford is more recent and published? Radford is a published decision, Your Honor. But the principle holds, which is that what this Court has required is that coherent discussion. And if you look at the ALJ's discussion, the ALJ does, in fact, discuss almost all of the elements that go into a 1.02 analysis, including that she engages in extensive daily activities, such as driving, living alone, handling her own finances, laundry, cooking, grooming, et cetera. You said that a discussion of almost all of the elements is good enough? Well, Your Honor, profession is not the standard. The standard that this Court has articulated is, is there a coherent discussion, a meaningful discussion, that provides an opportunity for meaningful review, such that a review in court is able to understand the basis for the ALJ's decision? And you have that here. I'd say the crux of the ALJ's decision is based on, number one, her engagement in extensive daily activities, and number two, the fact that she had routine, conservative, to use the ALJ's term, medical treatment. Ms. Keene never had back surgery, which the ALJ found contradicts any sort of finding that she had disabling pain. She had a spinal cord stimulator, which medical evidence indicates she was doing very well with, and that stimulator, in fact, addressed roughly 75% of her pain issues. What the ALJ found and articulated very clearly was that those facts, along with the fact that she was able to ambulate from the parking lot to her office without the use of any pain at all, was more than enough to indicate that she was able to walk and she had the RFC. The ALJ did not label that discussion as being part of listing 1.02. That's correct, but all of the elements for that discussion are there, as Judge Niemeyer pointed out. During this time period, 2012 to 2014, there's no evidence or testimony that Ms. Keene used a cane at all. She was prescribed a cane in 2013, but she does not actually testify that she uses it. I thought she did testify that she used it when she went to the grocery store. In 2014, I believe it's August 2014, is the first time that testimony appears, Your Honor. And if you go back earlier in time to— That was after she's gotten benefits. That's correct, Judge. She's been receiving benefits since July 1, 2014. But if you go back even earlier in time to March, June, October 2012, from examinations from Dr. Natasin and Dr. Walker, they found that she had normal motor strength, normal sensory functioning, normal gait, and normal motor strength and normal motor functioning. So all of that is more than sufficient evidence to support the court's finding that she did not satisfy listing 1.02, which the ALJ expressly says on page 4 of his opinion, as well as has sufficient residual functioning capacity. To briefly touch on some of the other points raised by Ms. Keene, as far as listing 1.04, the Sullivan case from the Supreme Court says that a claimant must meet all of the elements of a listing in order to be entitled for benefits. By her own admission, Ms. Keene did not satisfy the straight-leg test. She had five negative results from the straight-leg test. Again, by her own admission, she didn't satisfy it. On the point about the ALJ's finding regarding alleged failure to make a finding about a full day, the ALJ expressly found that Ms. Keene was able to work for a full day with the limitation that she could not stand or walk more than two hours in that eight-hour work period. Of course, as we contend in our brief, that argument has been waived. There's essentially no mention of it in either the district court's opinion or Ms. Keene's brief below. In terms of reaching, I'll just say there's not a lot there. There is a checkbox on the function report and a boilerplate medical instruction after she visited a doctor in 2011 stating that she should try to limit her reaching above her head onto shelves, but there's no instruction that she can't reach for normal items on a desk. Of course, even that instruction is somewhat inconsistent with the evidence that she was able to engage in normal routine activities. I would say my only other point on the 1.02 discussion, just to highlight the point that the perfection is not the standard. Your Honor, the ALJs of the Social Security Administration are expected to produce between 500 and 700 opinions a year. We have about 18,000 cases in federal court every year. In the many decades that SSA has been administering this program, we have yet to come across the perfect ALJ decision that thoroughly discusses every conceivable allegation to the satisfaction of the claimant. The standard is, is there a coherent discussion in the ALJ's decision, and it's our view that that's more than satisfied here. Happy to answer any other questions. Thank you, Your Honor. Thank you, Mr. Erfurt. Ms. Bainer. Yes, thank you. Opposing counsel is incorrect. He commented that she had not complained about a cane prior to, had not stated she used a cane prior to 2014. In the record, I believe it is at page 196, she definitely talks about, she checks the box, and she also talked about using her cane in 2013, which is the period we're looking at. You know, during her treatment for cancer, she appeared quite normal. The doctors made observations about her, and they even took a picture of her back. They said it was only mildly degenerative, and from what the observations made, I was focusing on the period from 2012 to 2014, because she did get benefits. So we're arguing about whether she could have continued working during that period, and the medical records during that time are pretty unremarkable. I mean, except she's experiencing pain pretty clearly, and she has, there's objective medical support for that. The ALJ listed every finding on that. She also had. It was on page 7 of the report. And so, and concluded that the treatment was conservative, that she was able to do the things normally. Her job was basically a sedentary job. And so it's hard to conclude that based on what the doctors are looking at, and seeing her, and she comes in and presents herself in a manner which looks like she could continue working. We don't have much medical evidence during that period. We have a cancer treatment. We have wills. You have MRIs that show cord compression. You have MRIs that show. Don't you think the ALJ listed, it's been a whole paragraph on every diagnosis. And he left it out. He left out spinal cord compression. He left out her facet arthropathy, which was quite significant. That's what the MRI report says. The ALJ just talks about spondylosis and arteriosclerosis. But she was using a cane. She was not using a cane when working, but she was working. And that was prior to the relevant period. More importantly, opposing counsel mistakes the standard here. There is the standard of substantial evidence. There's also the standard of whether or not the judge conformed with the pertinent legal requirements. He didn't. The listing, elements of the listing, none of the relevant listings are in his decision. They're just not there. They're not there. There are no explanations of how he got from the evidence that he does include, which is by no means all of it. He left out all the really tough stuff. He never talks about how he got there. How did he decide she could work without the help of assistance? When she was working, she had assistance. How did he decide that she could do bank deposits without resolving the conflict in the evidence of whether that's 10 pounds or 20 pounds? I believe she testified to 20, and I know she said it in her disability report. This decision simply does not comport with the legal requirements. Thank you very much. Well, thank you. I appreciate your time. Come down and greet counsel and then proceed on to the next case.
judges: Paul V. Niemeyer, William B. Traxler, Jr., Stephanie D. Thacker